WILLIAM A. O'DONNELL v. JAMES W. PERRIN.

*Tax sales—Application of funds—Demand—Acquiescence.*

Where a purchaser of lands at a tax sale for the year 1885 bid off certain descriptions for the tax of 1883, and paid the amount of his bids to the county treasurer, who afterwards declined to deliver the certificates unless the purchaser also paid the tax of 1882 on the lands so purchased, which he refused to do, and the treasurer selected from said bids enough to amount to the money so paid, including the amount due for the taxes of 1882, and so applied said money, canceling the remaining bids, such action was illegal, and the purchaser may recover his money of said treasurer after demand therefor, and refusal to acquiesce in such application.

Error to Saginaw. (Gage, J.) Argued June 26, 1889. Decided October 25, 1889.

*Assumpsit.* Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Trask & Smith,* for appellant.

*F. E. Emerick,* for defendant.

LONG, J. This action is in *assumpsit*, brought in justice's court, where plaintiff had judgment, which, upon an appeal to the circuit court for Saginaw county, was reversed. Plaintiff brings the case to this Court by writ of error.

Upon the trial in the circuit court the plaintiff was called as a witness in his own behalf, and testified, substantially, that he attended the tax sales in October, 1885, at the county treasurer's office, and there bid in several descriptions of land for delinquent taxes; that these sales were being made by the defendant as county treasurer of Saginaw county for delinquent taxes for the years 1882

and 1883; that sales for the taxes for each year were made separately; that the sales for the taxes of 1882 were made first; that there were several days intervening between the sales for the year 1882 and 1883.

That, within two or three days after the sales, he went into the office of defendant, took out his memorandum of purchases, and told defendant he had come to pay the amount of his bids, when defendant told him he was busy, but that he could leave' his money, and he would look it up later, and that he then left with defendant $120.29, the full amount of his bids. That a month or two thereafter, not having received his certificates of purchase, he went to defendant's office, and called for his certificates, and was there informed by the defendant that he had not left money enough, and that there was a balance. of $309.12 due on the lands he had purchased for the unpaid taxes of 1882; that he then told defendant he had not bid in the lands for the taxes of 1882, for the reason that the taxes for that year were illegal in amount, and would be contested; that defendant then told him he knew he had not bid in the lands for that year, but that he could not sell unless the purchaser paid the taxes for both years; that he refused to pay the taxes for the year 1882, and left the office; that the defendant thereafter commenced suit against him for a penalty of twice the amount, under the provisions of the tax law. This suit was never tried. Sometime in 1887 he called again upon defendant, when he said he had taken certificates that came within a few cents of the bid, and canceled the other bids, and returned them to the State. Defendant refused to give him his money back, but offered him certificates therefor, which he refused, as they did not represent the lands he had bid off, and he then commenced this suit to recover for the money paid defendant.

The defendant was then called in his own behalf, and testified substantially as follows:

"I was the treasurer of Saginaw county in 1885, and as such treasurer made the sales for delinquent taxes that year. The sales were for delinquent taxes of both 1882 and 1883. I sold the list of lands for delinquent taxes of 1882 before I began on the list for 1883. All lands not bid in by some one for taxes of 1882 were struck off to the State. At the commencement of the tax sales, I read to the bidders present the instructions of the Auditor General as to how the lands should be sold. After that, it was announced each morning that taxes of 1883 were subject to prior taxes, and such instructions required all lands sold for taxes of 1883 to be sold subject to taxes of 1882. After the sales of 1882 were completed, I began the sales of 1883, and completed them. The sales lasted six or seven days.

"Soon after the sale was over, plaintiff came into my office, and took out a memorandum of the lands he said he had bid in, and said he had come to pay for them. I told him I was too busy then, * * * but he could leave me the money, and I would credit it on the books to him. He gave me $120.29.

"When I had reached the lands he had bid in for the taxes of 1883, I found that the same descriptions were delinquent for the taxes of 1882 to the amount of $309.12; making a total amount of taxes due for both years $429.41. I wrote plaintiff to call and see me and he did so a short time after. I told him I could not issue certificates of purchase to him of the lands bid in by him without he paid the taxes on the same land for 1882. He said he would not pay the taxes of 1882; that all he wanted was certificates of purchase for the lands he had bid in for the year he had bid it in. I told him I could return all the land to the State as not sold, and return him his money, or I could select out of the lot he had bid off what would come to the amount of money he had paid me, and return the balance of the lands. He said he wanted certificates for just what he purchased, and nothing else. I offered him the money he had left with me, but he went away without taking it.

"When I came to make my return of lands to the Auditor General, I selected of the various parcels bid in by the plaintiff some lands that the taxes of both years

amounted to $120.13, and issued certificates of purchase of those lands to plaintiff, and returned the balance of the lands plaintiff bid off as lands sold to the State. It was some months after this before I saw plaintiff again. He came into the office, and asked if I had his certificates ready. I told him I had, and got them. Plaintiff took out his memorandum of purchase, and I started to read the certificates. When I came to the certificate for the taxes of 1882, he said, 'I did not buy for that year.' I replied: 'I understand you did not bid them in; you bid in 1883, and I put in 1882, because I could not do otherwise.' We had some angry words, and plaintiff left the office. Before he left I offered him these three certificates and 16 cents in money, which he refused."

These certificates were then offered and received in evidence.

Upon this state of facts, the court charged the jury, among other things, that the county treasurer had no authority, under the law and the direction of the Auditor General, to sell to plaintiff the lands for the taxes of 1883, separate from the taxes of 1882; that the law required him to receive the bids for both years, or none; and directed the jury to find a verdict in favor of defendant.

The law under which these sales were made provided that the sales of both years should take place in October, 1885, and that—

"In all cases when a description of land is offered as State-tax land, and the same description, or any part thereof, shall be offered in the regular list of lands delinquent for taxes, it shall be the duty of the county treasurer to inform the person bidding for the description offered as State-tax land, of the fact, and such person shall be required to purchase the description so offered in the regular list at the same time the description offered as State-tax land is bid off by him; and, in case of his neglect or refusal so to do, the treasurer shall decline the bid of the person so refusing, but shall continue to offer such description as if no bid had been made thereon."

The county treasurer, at the opening of the sales, notified those in attendance at the sale that all persons bidding, in case they purchased from the regular list of 1883, would be required to pay any taxes that might appear in the list for the year 1882. Under this proof, which was not in dispute, the court further directed the jury that the county treasurer was not required every time he offered any description to make the same notification; that the notification made at the opening of the sale each day would be sufficient; that the law required him to receive from the bidder for both years, or none.

The assignments of error are based entirely upon the charge of the court, and are six in number. We need not discuss these several assignments of error. If the court was not in error in directing the verdict in favor of the defendant, under the circumstances here stated, then, whatever the views of the court may have been upon any particular part of the case, or upon the evidence, becomes wholly immaterial. The court having directed the verdict for the defendant, however, we must upon this record assume that the evidence of the plaintiff is true, and that, if the questions of fact had been submitted to the jury, they would have followed the plaintiff's evidence. It therefore becomes necessary to consider the case from the plaintiff's evidence, and to determine whether, under his own evidence, he was entitled to recover.

His contention is that the defendant never offered to return him his money, and he so testified on the trial. In almost every other essential the plaintiff and defendant do not disagree.

The plaintiff, it appears, attended the sales of the lands for taxes of 1882, and bid in certain descriptions of lands, and attended a few days thereafter the sales for taxes of

1883, and also bid in certain descriptions. He desired to contest the validity of the taxes on part of those descriptions advertised for the taxes of 1882, but he bid off three of those descriptions advertised for the taxes of 1882. He also bid off the same three descriptions for the taxes of 1883.

He also bid off three other descriptions for the taxes of 1883, which were also advertised for the taxes of 1882, but he did not bid off the last three descriptions for 1882, he desiring to contest them.

The following is a statement of the taxes for each year; those marked with a star being the bids taken by the plaintiff:

| Descriptions. | Taxes of 1882. | Taxes of 1883. |
|---|---|---|
| No. 1—Lots 1,2,3,4,5,6,7,8, blk. 8 | 55.41 | *13.17 |
| No. 2—Lot cor. Douglass and King st | 87.75 | *17.38 |
| No. 3—Lots 1,2,3,4,5,6,7,8, blk. 6 | 76.05 | *13.17 |
| No. 4—Lots 1,2,3,4,5,6,7, 8, blk 7 | Lots 3,4,5,6,7,8, blk. 7, 44.23 *15.00; lots 1 and 2, blk. 7 *14.23 | |
| No. 5—Lots 1,2,3,4, blk. 9 | *12.59 | *11.08 |
| No. 6—Lots 1,2,3,4,5,6,7, w ½ of 8, blk. 10. | *12.59 | *11.08 |

Bids taken 40.18.    Bids taken 80.11.tl.120.29
" not " 219.21.     " not " 44.23.tl.263.44

Plaintiff deposited with defendant the amount of his bids, viz., $120.29. On learning that plaintiff had taken bids on lands advertised for 1882 that he had not also taken in the list for 1883, and that he had also taken bids for land advertised for 1883 that he had not also taken in the list for 1882, defendant informed plaintiff that in every such case he must take the bid for both years, or he could not take it for either year, as section 59 of the tax law required him to decline all such bids that did not include both years. Plaintiff declined to

take the bids as the defendant (and section 59 of the tax law) required, but demanded the certificates for the bids that he had taken, and, on being refused, he left the defendant's office, leaving the money that he had deposited for his bids, with no further instructions in regard to it. The defendant, for the purpose of making his returns of this transaction to the State, selected from plaintiff's lands, upon which plaintiff had taken the bid for either 1882 or 1883, such descriptions as would the most nearly amount to the sum of money deposited by plaintiff, and made out certificates for them in the name of plaintiff, intending to make these certificates comply as nearly as possible with the requirements of the tax law, and laid these certificates aside to be delivered to plaintiff, and canceled the remainder of plaintiff's bids, and returned them to the Auditor General, and paid the money deposited with him by plaintiff over to the State. Nothing further was done about the matter until late in the year 1887, when plaintiff demanded his money, and, payment being refused, he commenced this suit.

It is apparent that plaintiff knew in fact, at the time he made these bids, that he was not entitled under the law to hold bids under the sales of lands delinquent for the taxes of 1883, unless he also took the bids for the sales of 1882 upon the same descriptions. He knew that his lands were in both lists, and attended and bid at both sales.

It is not claimed by plaintiff that he made any demand for his money until 1887, when he demanded it, and payment was refused. This was after the county treasurer had paid the money over to the State, and set aside the bids for the plaintiff to the amount of the money paid by him. The county treasurer, in making the sales and receiving the money on such purchases, was acting as the agent of the State, and, if the plaintiff then had any

cause to complain, defendant contends that he should have made his application to the Auditor General, and not to the county treasurer.

This action is not brought against the defendant to recover damages for any misconduct or negligence, but for money had and received. When the moneys were paid on the bids made by plaintiff under the sales for taxes of 1883, he was bound also to take the same lands for the taxes of 1882. The statute and instructions from the Auditor General required this, and it is not pretended that plaintiff was ignorant of the fact. He refused to have his bids canceled in the first interview with the county treasurer, but insisted on retaining them; claiming, however, that he was not bound to pay the taxes on these descriptions for 1882, because of some irregularity. It is not shown, however, that the defendant had any instruction from the plaintiff to apply the funds in his hands as he did. They were left with him to apply upon particular bids, and upon descriptions then noted by him. While it may be true that the plaintiff was not entitled to hold the bids for the taxes of 1883, unless he also took the bids and paid the taxes upon the same descriptions for 1882, yet the defendant, as county treasurer or as agent for the State in making the sale, could not compel him to take the bids for 1882, unless he might so elect; neither had the defendant the right to so apply the funds in his hands, unless authorized to do so by the plaintiff. It was his duty, if the plaintiff was not entitled to hold the bids for 1883 without taking those of 1882, to have canceled the entire bids, struck the bids off to the State, and returned the money, or tendered a return. Instead of this, and without any authority from the plaintiff, he selected the descriptions which he thought plaintiff ought to take to meet the amount of money deposited, and made certificates to plaintiff for those,

and returned the balance to the State.    This action was not authorized by the plaintiff, and we know of no rule of law that would authorize such application of funds in the hands of a party belonging to another.    The court was in error in so holding.

There seems to have been but one question of fact in dispute: Did the plaintiff demand his money, and refuse to have it so applied?    If he did, he is entitled to recover. If not, and he acquiesced in the disposition of it made by the defendant, or ratified the act of the defendant in so disposing of it, then he would be bound by such ratification, and ought not to be permitted to recover.

The judgment of the court below must be reversed, with costs, and a new trial ordered.

The other Justices concurred.